NO.   93-172

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

PATRICIA L. ZANDER, nka PATRICIA L. SERBA,

      Petitioner and Respondent,

  and

KENNETH D. ZANDER,

      Respondent and Appellant.

FILED

DEC 02 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

        Arthur D. Agnellino, Attorney at Law,
        Missoula, Montana

      For Respondent:

        Kerry N. Newcomer, Geiszler & Newcomer,
        Missoula, Montana

Submitted on Briefs:  August 26, 1993

Decided:  December 2, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Patricia L. Zander, now known as Patricia Serba, petitioned the District Court for the Fourth Judicial District in Missoula County to dissolve her marriage to Kenneth D. Zander. A trial was held in 1990 and a decree of dissolution was entered on April 28, 1992. The court distributed the marital estate, awarded maintenance to Patricia, and ordered Kenneth to pay Patricia's medical insurance as well as her attorney fees and costs. TWO additional orders affecting pension benefits were entered on December 10, 1992. From the decree and subsequent orders, Kenneth appeals.

We affirm in part and reverse in part.

Kenneth raises the following issues on appeal:

1. Did the court err in its valuation and distribution of the marital estate?

2. Did the court err when it awarded Patricia an interest as a 100 percent contingent annuity holder in Kenneth's pension?

3. Did the court err when it awarded Patricia maintenance for an indefinite period of time?

4. Did the court err when it required Kenneth to pay Patricia's medical insurance for an indefinite period of time?

5. Did the court abuse its discretion when it required Kenneth to retrieve his personal property from the parties' residence within a specified period of time?

6. Did the court err when it ordered Kenneth to pay Patricia's attorney fees and costs?

2

Patricia and Kenneth were married in 1964. They had four children who had reached adulthood at the time Patricia petitioned the court to dissolve the parties' marriage on February 4, 1987. Kenneth was employed by Stone Container Corporation in Missoula, and had previously worked for Hoerner Waldorf and Champion International. Patricia worked at home and as a part-time cleaning person. In 1987, she began licensed practical nurse training and obtained her license in June 1989. At the time of trial, Patricia was earning approximately $300 per month as a part-time LPN. She was limited to part-time work because of ongoing knee and back problems.

While the dissolution was pending, Patricia began studying for a Registered Nurse degree. She testified that employment as a registered nurse would allow her to be self-sufficient and would give her job options that would not aggravate her existing health problems.

The trial in this matter was held on July 30 and 31, 1990, following a failed reconciliation attempt and a long series of temporary restraining orders which were issued to protect Patricia and the parties' rarital property. The court issued its findings of fact and conclusions of law on January 7, 1991, but no decree was entered because certain issues had been left unresolved.

Following another series of hearings and interim orders, the court entered a decree of dissolution and supplemental findings and conclusions on April 28, 1992.

With respect to the division of the marital estate, the court, after considering the parties' marital assets, health, respective earning capacities, and educational and monthly living costs, concluded that the following division of property was equitable and not unconscionable: Patricia was given the family home, valued at $54,689.50, and designated personal property, for a total award constituting 60 percent of the marital estate. Kenneth was given personal property and his accumulated pension, which had a present value of $36,582, for a total award constituting 40 percent of the marital estate. Furthermore, the court found that because Patricia would not be able to accumulate an adequate pension for her retirement, Kenneth should be required to designate Patricia as the "irrevocable contingent annuitant for the present value of his pension" unless Patricia predeceased Kenneth. Patricia's attorney was ordered to prepare a "qualified domestic relations order" directing Kenneth's pension administrator to implement this portion of the decree.

The court further found that Patricia was not receiving income producing property and, due to her physical disabilities and educational status, was unable to support herself without further education and training. Therefore, it concluded that she was entitled to maintenance "until she completes her RN degree and obtains full-time employment" and ordered Kenneth to pay monthly maintenance in the amount of $1154. This amount included one-half of the monthly mortgage payments due for the home awarded to Patricia, and the remainder was based on Patricia's monthly

4

expenses while in school. Patricia had started studying for her nursing degree, and estimated that it would take another two to five years to complete her studies. However, she had not made any serious progress toward earning the degree over the two year separation period during which she had been receiving temporary maintenance in the same amount. The monthly maintenance award constituted approximately half of Kenneth's monthly income. The decree also included a provision that if Kenneth died before his obligation to pay maintenance was completed, Patricia would have a claim against his estate for the remaining obligation.

The court found that Patricia was unable to provide her own health insurance "given her part-time work which provides no insurance coverage and her status as a student which is expected to continue for the next several years." The court concluded that, under federal law, employers are able to continue insurance coverage to an employee's former spouse for at least three years. Therefore, Kenneth was ordered to provide health insurance coverage for Patricia as follows:

> Respondent shall provide health, dental and ocular insurance for Petitioner at such benefit levels as the policy that would ordinarily provide through his employment for a period equal to that available from his employer as separate coverage under COBRA, or other elected coverage as is provided under federal law, until Petitioner obtains full time employment as a registered nurse.

Due to the fact that the court had issued several protective orders during the course of the proceedings which had to be enforced by law enforcement officials, the court ordered Kenneth to

5

retrieve any of his personal property which was still in the family home "within 30 days from the date of this Decree or the property award is deemed forfeited." Kenneth was also permanently enjoined from contacting or communicating with Patricia in any manner.

Finally, the court found that due to Kenneth's conduct, Patricia had incurred substantial attorney fees which she lacked the financial ability to pay. Therefore, pursuant to § 40-4-110, MCA, it ordered Kenneth to pay Patricia's attorney fees in the amount of $16,910.84.

As directed in the decree, two qualified domestic relations orders were prepared directing the pension benefits administrators at stone Container and Champion International to designate Patricia the 100 percent joint survivor annuitant of Kenneth's pension benefits accrued through July 31, 1990. These orders were signed by the court on July 29, 1992, but were not filed until December 10, 1992. Notice of entry of judgment was filed on December 11, 1992. From the decree of dissolution and subsequent orders, Kenneth appeals.

I.

Did the court err in its valuation and distribution of the marital estate?

The distribution of the **marital** estate is governed by § **40-4-202**, MCA. This statute vests the district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. *In re Marriage of Rock*

(1993), 257 Mont. 476, 850 *P.2d* 296; *In re Marriage of Collett* (1981), 190 Mont. 500, 621 *P.2d* 1093.

The standard of review employed by this Court in marital property division cases is whether the district court's findings of fact are clearly erroneous. *In re Marriage of McLean/Fleury* (1993), 257 Mont. 55, 849 *P.2d* 1012. When there is substantial credible evidence to support the court's findings and judgment, this Court will not alter the trial court's decision unless there is an abuse of discretion. *In re Marriage of Scoffield* (Mont. 1993), 852 *P.2d* 664, 50 St. Rep. 560.

In this instance, Kenneth contends that the court failed to consider the net worth of the parties prior to dividing the marital property and that it erred by awarding 60 percent of the marital estate, including the family home, which represented the most valuable part of the parties' marital assets, to Patricia. He also maintains that the court's valuation of his pension was incorrect because of the beneficiary interest awarded to Patricia, and this resulted in an inequitable distribution of the marital estate.

After reviewing the record, we conclude that the District Court properly considered the statutory criteria found in § 40-4-202(1), MCA, before dividing the marital assets. In its findings and conclusions, the court set forth the parties' net worth, considered the parties' earning capacities in terms of respective skills, training, and physical limitations, and

7

evaluated each party's ability to acquire future assets, such as savings or retirement funds. The issue concerning the value of the pension due to the contingent beneficiary interest awarded to Patricia will be discussed under Issue II. However, pursuant to our decision in *In re Marriage of Kis* (1982), 196 Mont. 296, 300-01, 639 P.2d 1151, 1153, the court properly considered the present value of the pension as a marital asset to be equitably apportioned between the parties, and its valuation was supported by testimony from a certified public accountant regarding its present value. Furthermore, the record reveals that the court's valuation of the home and personal property assets were supported by third party appraisals.

Section 40-4-202, MCA, requires that a court achieve equity in distributing marital property, but not necessarily equality. *In re Marriage of Fitzmorris* (1987), 229 Mont. 96, 745 P.2d 353. Reaching this equitable distribution will at times require the court to engage in discretionary action and these discretionary judgments will not be disturbed on appeal absent an abuse of discretion. *Rock,* 850 P.2d at 298.

After considering the circumstances of this case, we conclude that there was substantial evidence to support the court's findings and, based on those findings, the court did not abuse its discretion when it apportioned the assets giving approximately 60 percent of the estate to Patricia and 40 percent to Kenneth. We

affirm the court's distribution of the marital property, subject to the following discussion regarding the award of a beneficiary interest in Kenneth's pension to Patricia.

II.

Did the court err when it awarded Patricia an interest as a 100 percent contingent annuity holder in Kenneth's pension?

The marital estate in this instance consisted primarily of two major assets: the family home, and Kenneth's pension. The court determined an **equitable** distribution would be achieved by awarding Patricia the family home and Kenneth his pension. However, because the court found that Patricia was not likely to be able to accumulate an adequate pension prior to her retirement, it awarded her a 100 percent contingent annuity interest in the present value of the pension in the event that Kenneth predeceased her.

Kenneth contends that Patricia's qualified interest in his share of the estate makes it non-assignable as a property right, and therefore, its value is diminished. He maintains that this resulted in an inequitable property distribution because the pension had less value than assigned by the court.

Patricia claims that Kenneth failed to submit evidence that the contingency diminished the value of the pension and the court, therefore, was not required to consider this possibility. Furthermore, she claims that it was within the court's discretion to designate her as the alternate payee and this contingency has

9

only minimum impact on Kenneth because she will only receive benefits if he predeceases her.

The court's property distribution was based on the relative values of the family home and the pension, which were the parties' two major assets. By designating Patricia as the irrevocable recipient of the survivorship benefits, its value to Kenneth was diminished because part of the value of a pension is the ability to provide for others through survivorship benefits. Kenneth is not able to designate his children or grandchildren, or a subsequent spouse, as recipients of his pension benefits. Consequently, the value of the pension to Kenneth, should he predecease Patricia, is illusory and this has the effect of eroding the basis of the court's equitable distribution of the estate. If Kenneth does predecease Patricia prior to the time he retires, he will essentially have received nothing from the marital estate. Since our conclusion that the estate was equitably divided rests on the full allocation of Kenneth's pension benefits to him, we conclude that to then erode the value of those benefits in any way would be inequitable.

Because the pension was the only major asset awarded to Kenneth, we conclude that the restriction placed on Kenneth's pension results in an inequitable distribution of the estate and that this constitutes an abuse of discretion by the court. Therefore, to insure that the court's distribution remains equitable, we reverse that part of the District Court's order which

awarded Patricia the contingent beneficiary interest in Kenneth's pension.

III.

Did the court err when it awarded Patricia maintenance for an indefinite period of time?

This Court will not reverse a district court's award of maintenance unless the findings of fact are clearly erroneous. *In re Marriage of Eschenbacher* (1992), 253 Mont. 139, 831 P.2d 1353. An award of maintenance is governed by § 40-4-203, MCA, and is dependent upon a finding by the court that Patricia lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. *In re Marriage of Dunn* (1991), 248 Mont. 95, 98, 809 P.2d 571, 573.

Kenneth challenges the court's award of maintenance on two bases. First, he contends that the court failed to consider his ability to maintain his own standard of living when it awarded Patricia essentially half of his income in the form of maintenance. He notes that § 40-4-203(2)(f), MCA, requires the court to consider "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." It is his contention that the court failed to consider his health, instability of contract negotiations at Stone Container, and his ability to maintain his own living standards when it awarded maintenance to Patricia in the amount of $1154 per month.

11

Second, he contends that the court erred when it ordered payment of maintenance until Patricia "completes her RN degree and obtains full time employment" without including a specific time limit on his maintenance obligation. Although Patricia testified that it would take between two and five years to complete her RN degree, Kenneth points out that the maintenance obligation, as decreed, could continue indefinitely if Patricia chooses not to complete her studies. Kenneth notes that during the time period between the parties' separation and trial, while he was paying maintenance in an amount which would allow Patricia to attend school, she made very little progress toward earning her degree.

A review of the record demonstrates that substantial evidence exists to support the court's finding that Patricia does not have sufficient income to pay her monthly expenses and that she is unable to support herself through appropriate employment. There is also sufficient evidence to show that the amount awarded will allow Patricia to meet her needs until she can become self-sufficient through appropriate employment, and that the court did consider Kenneth's income and whether he would be able to meet his own needs while paying the maintenance Patricia requires. We conclude that the court's findings regarding Patricia's eligibility for maintenance, and the amount awarded, are not clearly erroneous.

With respect to Kenneth's second argument, § 40-4-203(2)(b), MCA, requires the court, when determining the amount and duration of maintenance, to consider the "time necessary to acquire

12

sufficient education or training to enable the party seeking maintenance to find appropriate employment." It is clear from the decree that the intent of the court when it awarded maintenance was to provide support for Patricia during the time necessary to complete her nursing degree. There was also testimony from Patricia that she expected this to take from two to five years. However, the decree contains no time limitation on the award. Furthermore, there was evidence that Patricia had made very little progress toward earning her degree during the period that she was receiving temporary maintenance.

We agree with Kenneth's assertion that the language of the decree could result in a maintenance obligation for an indefinite period of time. This Court has favored providing the person obligated to pay maintenance as much certainty as possible regarding the amount and duration of the obligation. *In re Marriage of Ernst* (1990), 243 Mont. 114, 793 P.2d 777. In this case, because there was evidence regarding the length of time it would take Patricia to complete her degree, we conclude that the court erred by not putting a time limitation on the maintenance award.

Therefore, we vacate the court's award of maintenance for an indefinite period and remand for a hearing to determine a reasonable limitation on the duration of the maintenance award.

IV.

Did the court err when it required Kenneth to pay Patricia's medical insurance for an indefinite period of time?

13

Kenneth contends that the court's order regarding medical insurance impennissibly requires him to provide coverage for Patricia beyond the time period provided for under federal law.

The federal statute cited by Kenneth, 5 U.S.C.A. § 8905a (1993), provides that a former spouse is entitled to continue health coverage under the other spouse's employment plan for a period not to exceed 36 months after the dissolution. However, nothing in that statute prohibits a court from designating who is required to pay for such coverage. The dissolution decree provides that if Patricia has not obtained appropriate employment after 36 months have elapsed, Kenneth must provide alternate coverage until she "obtains full time employment as a registered nurse." Kenneth cites to no authority which prohibits such an order.

However, the requirement that Kenneth pay Patricia's medical insurance is another form of maintenance. Therefore, for the same reasons stated above, we conclude that there should likewise be a time limitation on Kenneth's obligation to provide health insurance for Patricia.

We affirm this provision in the decree to the extent that Kenneth is prohibited from interfering with Patricia's rights to continued coverage under Kenneth's insurance plan for a period of 36 months after the dissolution and that he can be required to pay for Patricia's coverage during the time that she is entitled to maintenance. However, we remand for a hearing to determine the duration of Kenneth's obligation consistent with the duration of his obligation to pay maintenance.

14

V.

Did the court abuse its discretion when it required Kenneth to retrieve his personal property from the parties' residence within a specified period of time?

The dissolution decree required Kenneth to retrieve the personal property awarded to him from the family home within 30 days from the date of the decree. This transfer was to take place under the supervision of the Missoula County Sheriff, and if it did not occur within the specified time frame, the property was deemed forfeited.

Kenneth contends that the court abused its discretion when it imposed this kind of a limitation because it was punitive in nature and there is no statutory authority for this kind of restriction. Furthermore, he claims he did not retrieve the property within 30 days from entry of the decree because he was waiting for notice of entry of judgment, which was not forwarded to him until almost eight months later. He contends the 30 day period should have been tolled until that time.

A district court has broad discretion in devising methods to accomplish an equitable distribution of the marital property. *Kis*, 639 P.2d at 1155; *In re Marriage of Johnsrud* (1977), 175 Mont. 117, 572 P.2d 902. Here, the record demonstrates that the court had issued several temporary restraining orders during the course of the proceedings and a restraining order was eventually made a permanent part of the decree. Also, Kenneth had refused to comply with

15

several of the pre- and post-trial orders which had necessitated the issuance of enforcement orders. The record justifies the District Court's concern for a quick, supervised exchange of property. We find no abuse of discretion in the court's decision to impose a specific time and manner for the property distribution to occur.

We also find no merit in Kenneth's argument that the 30 day time limit should have been tolled until he received notice of entry of judgment. Pursuant to Rule 77(d), M.R.Civ.P., the filing of a notice of entry of judgment by the prevailing party in an action starts the **time** period for filing a notice of appeal. However, Kenneth cites no authority for his contention that the provisions of a valid judgment or decree are "tolled" until the time for appeal starts. The decree entered on April 28, 1992, stated that he had 30 days from the date of the decree to retrieve his property. Kenneth does not allege that he was unaware of this provision or that he did not receive a copy of the decree. The fact that notice of entry of judgment was not filed until several months later does not excuse his failure to comply with the provisions of the decree.

VI.

Did the court err when it ordered Kenneth to pay Patricia's attorney fees and costs?

Section 40-4-110, MCA, provides that a court may, after "considering the financial resources of both parties," order a party to pay reasonable costs and attorney fees to the other party

16

in any dissolution or custody proceeding. This Court has held that an award of attorney fees under this statute must be based on necessity, must be reasonable, and must be based on competent evidence. *In re Marriage of Barnard* (1990), 241 Mont. 147, 785 P.2d 1387. When reviewing the discretion vested in the district court under this statute, this Court will not disturb a district court's findings on appeal if there is substantial evidence to support those findings. *In re Marriage of Hall* (1990), 244 Mont. 428, 798 P.2d 117.

In this instance, the court ordered Kenneth to pay Patricia's attorney fees and costs totalling $16,910.84. This was based on its finding that due to Kenneth's conduct, Patricia had incurred substantial attorney fees and that she lacked the financial ability to pay this amount. Evidence was presented which documented the reasonableness of the fees she incurred and that she lacks the financial ability to pay these fees. However, the statute specifically requires the court to consider the financial resources of both parties. When neither party is better able to pay attorney fees than the other, it is proper to hold each responsible for his or her own attorney fees. *In re Marriage of Hall* (1987), 228 Mont. 36, 740 P.2d 684.

Patricia urges this Court to consider Kenneth's anticipated disposable income level for 1993 as established in a hearing regarding a petition for bankruptcy. However, on review, we must

17

consider whether the court's findings regarding both parties' financial resources are supported by the evidence in this case.

In Finding XXV of the January 1991 findings and conclusions, the court found that, after maintenance and payment of one-half of the mortgage payment, Kenneth "is left with approximately $1,900 per month for living expenses." However, in Finding XXVII, the court determined that Patricia has a monthly income after taxes of $1,587.06, while Kenneth's income after taxes and payments is $1,123.75. It concluded that "it is evident that [Patricia's] monthly income is substantially higher than that of [Kenneth's]." Furthermore, the findings indicate Patricia's maintenance award constitutes approximately half of Kenneth's monthly income. Finally, in Conclusion IX, the court stated the following:

> Given the Finding that Petitioner is financially unable to pay her attorney fees and costs and Respondent's financial ability to do so, he should be Ordered pursuant to Section 40-4-110, MCA, to pay Petitioner's fees and costs in an amount to be determined at a hearing . . . .

This conclusion is not supported by the evidence as demonstrated by the findings set forth by the court. The court found that Patricia has a higher monthly income than Kenneth, but then determined that he was more financially able to pay her attorney fees. Because the evidence does not support this conclusion, we hold that the court erred in awarding Patricia attorney fees.

We recognize that part of the court's decision was based on the fact that Kenneth was largely responsible for the amount of fees incurred by the parties. In *In re Marriage of Syljuberget* (1988)), 234

18

Mont. 178, 763 P.2d 323, we affirmed an award of attorney fees when the majority of fees were similarly due solely to one party's lack of cooperation. However, in that case, there was evidence to show that the wife was without funds to pay those fees and that the husband did have sufficient resources. Here, the court's findings do not support a similar conclusion.

The award to Patricia of an interest as a 100 percent contingent annuity holder in Kenneth's pension is reversed. We otherwise affirm the court's distribution of the marital estate, including the provision which required that Kenneth retrieve his property within 30 days.

The award of maintenance, and the provision requiring Kenneth to pay Patricia's health insurance, are affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

The award of attorney fees and costs to Patricia is reversed.

_____
J tice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

19

December 2. 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


ARTHUR D. AGNELLINO
Attorney at Law
200 East Pine
Missoula, MT 59802

Kerry N. Newcomer
GEISZLER & NEWCOMER
265 West Front
Missoula, MT 59802


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy