No. 93-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

ROBERT DOWD DOOLITTLE,

   Petitioner and Appellant,

 and

PRISCILLA E. DOOLITTLE,

   Respondent and Respondent.

FILED

MAY 17 1994

_...f Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
      In and for the County of Flathead,
      The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

   For Appellant:

      Gary A. Crowe, Attorney at Law,
      Kalispell, Montana

   For Respondent:

      Randy K. Schwickert, Attorney at Law,
      Whitefish, Montana


       Submitted on Briefs: April 7, 1994

           Decided: May 17, 1994

Filed:

_____
      Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Robert Dowd Doolittle appeals from those portions of the Findings of Fact, Conclusions of Law, and Decree of Dissolution of the Eleventh Judicial District Court, Flathead County, which relate to the award of maintenance to Priscilla E. Doolittle. We affirm.

Robert Dowd Doolittle (Robert) filed a petition for dissolution of his twenty-five year marriage to Priscilla E. Doolittle (Priscilla). The District Court appointed a Special Master pursuant to Rule 53, M.R.Civ.P. Robert and Priscilla subsequently entered into a written property settlement agreement which resolved most of their differences. At the time of the hearing before the Special Master, the parties resolved an additional issue.

The sole issue remaining for determination by the Special Master was whether Priscilla was entitled to maintenance and, if so, the duration and amount of that maintenance. The Special Master determined that Priscilla lacked sufficient property to provide for her reasonable needs and, without retraining, was unable to support herself through employment. The Special Master recommended that the District Court award Priscilla maintenance in the amount of $250 per month for three years or until, with due diligence, she completed the necessary education for a degree in certified public accounting.

The Special Master's Report was filed and Priscilla moved the District Court to adopt it. Robert filed an objection to the Special Master's findings relating to Priscilla's inability to

2

support herself due to poor health, on the basis that the findings relied solely on hearsay testimony admitted over objection. His supporting brief expanded the bases of his objection somewhat. The District Court determined that Robert failed to establish that the Special Master's findings were clearly erroneous and adopted the Special Master's findings and conclusions.

With regard to the maintenance issue, the court found that Priscilla met the prerequisites of § 40-4-203(1), MCA, and, therefore, concluded that she was entitled to maintenance. The substance of the maintenance provision states as follows:

> 8. [Robert] is required to provide spousal maintenance to [Priscilla] in the amount of $250.00 per month for a period of three (3) years or until [Priscilla] completes with due diligence the necessary education for a degree in Certified Public Accounting. Said sum shall be payable beginning with the month of September, 1993, and payable on the 10th day of each month thereafter.

Robert appeals.

Robert asserts numerous errors in the Special Master's findings, as adopted by the District Court. Priscilla responds that he raised only one objection to those findings when the Special Master's report was filed and, therefore, that only one issue is properly before us.

Rule 53(e)(2), M.R.Civ.P., is clear that, in nonjury actions such as this, "the [trial] court shall accept the master's findings of fact unless clearly erroneous." The burden of challenging the master's findings is on the party objecting; the related burden of establishing that a finding is clearly erroneous also is on the party objecting. The intent--implicit, but clear--of Rule

3

53(e)(2), M.R.Civ.P., is that all objections to a master's report must be timely made in a party's written objections. In the future, objections not made to the district court at that juncture will not be entertained by this Court on appeal. Due to the absence of earlier interpretations of Rule 53(e)(2), M.R.Civ.P., however, we will address all of the issues Robert raises on appeal.

Did the District Court err in determining that Priscilla met the threshold requirements of § 40-4-203(1), MCA?

This Court will not reverse a district court's award of maintenance unless the court's findings of fact are clearly erroneous. In re Marriage of Zander (Mont. 1993), 864 P.2d 1225, 1231, 50 St.Rep. 1522, 1525. As a threshold matter, Priscilla is entitled to maintenance only if the District Court properly found that she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. See § 40-4-203(1), MCA. Robert assets error regarding both of these threshold requirements.

Robert contends that, in determining Priscilla's lack of sufficient property to provide for her reasonable needs, the District Court erred in not making a finding of fact of the value of Priscilla's one-half share of his retirement benefit accumulated during the marriage. The parties had stipulated to this division of Robert's employer-sponsored retirement benefits. Robert argues that the amount of Priscilla's retirement share must be considered by the court in determining whether Priscilla has sufficient property to provide for her reasonable needs.

Under the circumstances before us, Robert's argument borders

4

on the frivolous. The retirement benefit to be received by Priscilla in the future is totally irrelevant to her present ability to provide for her reasonable needs. It is "property" she does not currently have and, therefore, cannot contribute toward her living expenses. We conclude that the District Court did not err in failing to consider Priscilla's future share of Robert's retirement benefit in determining whether she has sufficient property to provide for her reasonable needs.

With regard to the court's findings relating to Priscilla's inability to support herself through appropriate employment, Robert argues generally that there is no admissible evidence of record to support the findings, because the only evidence submitted by Priscilla was her own testimony. This argument also borders on the frivolous. A party's testimony as to work experiences, living expenses, health history and physical abilities, based as it is on personal knowledge, is relevant and admissible. See Rules 401 and 402, M.R.Evid.

Robert's first specific argument in this regard is that the Special Master's findings that Priscilla's poor health precluded her from securing employment are based on inadmissible hearsay medical evidence to which he objected. We observe at the outset that Robert's reading of the Special Master's findings is overly broad; the only former employment of Priscilla's which the master found precluded by her poor health and related limitations is waitressing.

The record reflects two objections at the beginning of

Priscilla's testimony on direct examination about her health and medical history:

> Q:   Could you describe to the court what your current health is as well as a brief history of your health?
>
> A:   Last year I was diagnosed with breast cancer.
>
> [By Robert's counsel]:   Objection, Your Honor.   She can testify as to her personal knowledge with respect to her health.   If she's going to testify as to what a physician or doctor has told her regarding her health, we would like to have the physician or doctor present for cross-examination.
>
> .  .  .
>
> Q:   Describe your health history to the Court.
>
> A:   Okay.   Last year I was diagnosed --
>
> [By Robert's counsel]:   Objection, Your Honor.   When she refers to "Diagnosis," she's referring to a doctor's statement regarding her health.   I want her testimony to be limited to what she personally knows regarding her health, not what a physician has told her, a physician who is not in this court and not available for cross-examination.

The Special Master overruled both of the objections, but suggested that Priscilla rephrase her statements in testifying about her health.

Priscilla's testimony about her health and medical history continued thereafter without further reference to any "diagnosis" or statements made to her by physicians, and without objection. The testimony was limited to her personal knowledge.

She recounted that she had developed breast cancer in 1992, and had undergone surgery and chemotherapy.   She also testified that she had had breast cancer, surgery and chemotherapy ten years earlier and that the lymph nodes underneath both of her arms had

6

been removed. She testified that, as a result, she is unable to do heavy lifting and must avoid burns and extensive scratches. This relevant and uncontroverted testimony, to which no objection was made and no cross-examination was directed, provided a sufficient basis for the finding that Priscilla's health-related limitations precluded her from engaging in her former occupation of waitressing.

Robert's second specific argument relating to the findings of Priscilla's inability to support herself is that the Special Master erred in giving the testimony of his vocational rehabilitation expert, Charles Schloss, little weight. In opposition to Priscilla's testimony that she would be unable to support herself through her former occupations of bookkeeper, legal secretary, assistant restaurant manager and real estate agent, Schloss testified that Priscilla needed no further training to be employable. Robert apparently contends that Schloss' testimony mandated a finding that Priscilla was able to support herself and, therefore, the findings to the contrary were clearly erroneous. We disagree.

Schloss' testimony was accorded little weight because of its reliance on Montana Department of Labor information obtained prior to November 1991 regarding wage ranges and availability of jobs; in other words, the information was more than one and one-half years out of date at the time of the hearing in this case. Further, the Special Master found that Schloss reached his conclusions about Priscilla's skills and employability without interviewing her or

7

considering her physical limitations, relative inexperience and history of unemployment in recent years.

Here, the record contains conflicting testimony from Priscilla and Schloss on the issue of Priscilla's ability to support herself. The Special Master, having heard and evaluated the testimony and observed the witnesses' demeanor, accorded Schloss' testimony little weight. We will not substitute our judgment for that of the trier of fact regarding the credibility of witnesses or the weight to be given to their testimony. Matter of B.T.B. (1992), 254 Mont. 449, 454, 840 P.2d 558, 560-61.

We conclude that the record contains substantial credible and admissible evidence to support the findings that Priscilla lacked sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment; nor are those findings otherwise clearly erroneous. We hold, therefore, that the District Court did not err in determining that Priscilla met the threshold requirements of § 40-4-203(1), MCA, and was entitled to maintenance.

> Did the District Court err in determining the amount and duration of maintenance?

As set forth above, the court awarded Priscilla maintenance of $250 per month for three years or until, with due diligence, she completes the necessary education for a degree in certified public accounting. Robert argues that the District Court improperly applied both the "standard of living" factor in § 40-4-203(2)(c), MCA, and the "time necessary to acquire sufficient education . . .

8

to find appropriate employment" factor in § 40-4-203(2)(b), MCA.

Robert's argument regarding the "standard of living" factor is that the amount of maintenance awarded was based on Priscilla's testimony that she desired a degree in certified public accounting in order to achieve a standard of living higher than she enjoyed during the marriage. According to Robert, awarding maintenance on this basis is error because In re Marriage of Madson (1978), 180 Mont. 220, 590 P.2d 110, and In re Marriage of Skinner (1989), 240 Mont. 299, 783 P.2d 1350, define "appropriate employment" under § 40-4-203(2), MCA, in relation to the standard of living achieved by the parties during marriage.

The cases cited by Robert have no application here because Robert mischaracterizes Priscilla's testimony about the parties' standard of living and her purpose in desiring the accounting degree. Priscilla's testimony that she "wanted a better standard of living" related to her desire to obtain additional education during the marriage and Robert's discouragement of those desires. That testimony had no bearing on Priscilla's need, as found by the court, to obtain additional education in order to support herself after dissolution of the marriage. We conclude that the District Court did not err in applying the "standard of living" factor in § 40-4-203(2)(c), MCA.

Robert's final argument is that the District Court erred in awarding maintenance for an indefinite period of time. It is clear from the decree that the court intended to provide support for Priscilla during the time necessary to complete an accounting

9

degree. Priscilla testified that it would take her three years to obtain the degree. The court awarded maintenance for three years or until, with due diligence, she completed the education necessary for the accounting degree. It is the latter portion of the award with which Robert takes issue.

A similar argument was made and accepted by this Court in Marriage of Zander. That case is distinguishable, however. There, the spouse testified that she would need two to five years to get the degree; the district court awarded maintenance until the spouse "completes her RN degree and obtains full time employment." Marriage of Zander, 864 P.2d at 1231. We expressed our concern that the decree contained no time limit whatsoever on the maintenance award and, because there was evidence regarding the length of time needed to complete the degree, concluded that the district court erred by not putting a time limitation on the maintenance award. Marriage of Zander, 864 P.2d at 1232.

Here, Priscilla testified that it would take her three years to obtain the accounting degree. The court awarded maintenance for that period or until, with due diligence, Priscilla completed the necessary education. This does not represent the same totally open-ended maintenance of which we disapproved in Marriage of Zander. Rather, it represents the practical, common sense understanding by the District Court that even with diligence on Priscilla's part, it might not be possible for her to complete the degree within three years.

It is appropriate and, indeed, preferable in most cases for

courts to specify a time certain at which maintenance will terminate. We cannot say, however, that the duration of the maintenance award here constituted an abuse of discretion by the District Court under these circumstances. In the event Priscilla completes her degree work within the three years, Robert's maintenance obligation will cease at that time. If she does not complete the degree within a period of time thereafter which would comport with a reasonable person's definition of "due diligence," Robert's remedy will be to move the court to modify the maintenance award on that basis. Given the imbalance between the parties' respective personal resources now and for the foreseeable future, it is not inequitable to place this contingent burden on Robert.

Robert's final argument is that the District Court abused its discretion by awarding maintenance while Priscilla completes her education for an accounting degree because no evidence supported the underlying assumptions that she is capable of completing the education or that the education will render Priscilla able to support herself through "appropriate employment." In this regard, we need observe only that neither statute nor case law require such guaranteed outcomes as Robert apparently believes are necessary to support an award of maintenance during a reasonable period of additional education or training. The District Court did not abuse its discretion.

Final observations are appropriate here with regard to the required contents of an appellant's brief and the parties' respective burdens on appeal. We note that Robert failed to

11

present any legal authority whatsoever in support of two of his "issues." In response to Priscilla's statements in this regard, Robert asserts that he need not provide authority because it is respondent's duty to do so. Robert is in error.

Appellants are charged with the burden of establishing the errors they contend occurred in district court proceedings. Appellants must raise legal issues and support them with legal authorities. The requirement of Rule 23(a)(4), M.R.App.P., is clear that arguments must contain the appellant's contentions and "the reasons therefor, with citations to the authorities . . . relied on." Counsel are cautioned that compliance with the Montana Rules of Appellate Procedure is required and that this Court remains free to refuse to address issues not properly supported with legal authority.

We conclude that the findings challenged by Robert are not clearly erroneous. We further conclude that the court did not abuse its discretion.

AFFIRMED.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

12

May 17, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Gary A. Crowe, Esq.
Attorney at Law
P. O. Box 924
Kalispell, MT 59903-0924

Randy K. Schwickert, Esq.
Attorney at Law
6336 Hwy. 93 So.
Whitefish, MT 59937


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy