Juliann DUFFUS, Appellant,

v.

Kenneth DUFFUS, Appellee.

No. S–10206.

Supreme Court of Alaska.

June 20, 2003.

25. *Kalenka v. Taylor,* 896 P.2d at 229 (internal quotations omitted).

Peggy A. Roston, Law Office of Peggy A. Roston, Anchorage, for Appellant.

William S. Cummings, Ashburn & Mason, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Juliann Duffus divorced Kenneth Duffus in 1990, receiving primary custody of the parties' two children. Nine years later, no support order having yet been entered, Juliann moved to establish Kenneth's child support obligation. She now appeals, contesting several aspects of the method used to calculate Kenneth's 1990 support obligation, as well as the superior court's refusal to increase Kenneth's support in later years to reflect his increased annual earnings. We hold that Juliann's failure to object to the trial court master's recommended support calculation for 1990 precludes review of support for that year except on one point reflecting plain error. We reverse the support determination for subsequent years, holding that, because no child support order had been entered when Juliann filed her 1999 motion, the rule against retroactively modifying support did not prevent the court from adjusting Kenneth's 1990 support obligation to reflect his increased earnings over the following years.

## II. FACTS AND PROCEEDINGS

Juliann and Kenneth Duffus were married in 1978. Two children were born from their marriage—Elizabeth, born in January 1983, and Michelle, born in June 1987. In January 1989 the couple permanently separated.

Prior to their divorce trial, the parties reached an agreement regarding child custody, visitation, and division of the marital estate. Juliann received legal custody and primary physical custody of the children. With respect to child support, the agreement provided that "the child support obligation [should] be established pursuant to Civil Rule 90.3 and that a Civil Rule 90.3 affidavit [should] be completed and filed with the Court. The Court will then enter a separate order regarding the child support obligation." On August 7, 1990, the trial court granted the parents' request for divorce, incorporating their settlement agreement into its Findings of Fact and Conclusions of Law.

Over the following months, the parents exchanged correspondence concerning the Civil Rule 90.3 affidavit, but apparently never filed the affidavit. Consequently, the court never entered a child support order.

In May 1999, approximately nine years after the divorce, Juliann filed a motion to establish child support under the settlement agreement. The motion sought an award of back child support from the date of separation to the present. In February 2000 the superior court ordered that "[Juliann's] Motion to Establish Child Support shall be dealt with on a year-by-year basis in separate hearings for each year, or as the court otherwise directs."

In June 2000 Standing Master Andrew Brown heard evidence and argument concerning the calculation of child support for 1990, and in July issued a report calculating child support for that year. Based on his calculation of both parties' incomes for 1990 and the amount of time each party had physical custody of the children during that year, Master Brown "recommended that the court enter a child support order for 1990 as to [Kenneth] . . . for $36.63 per month."

Master Brown further recommended that the court reconsider its decision to "hold[ ] subsequent hearings for each of the post–1990 years as to incomes and support obligations." Master Brown thought that it would be fair to leave his calculation of support for 1990 in effect until Juliann filed her motion to establish child support in 1999 because the parties were at fault for failing

to secure a timely support order after their divorce. Further, he maintained, allowing yearly modifications "would go against Civil Rule 90.3(h)(2)'s prohibition against retroactive modifications of child support."

Juliann objected to Master Brown's report. Her objection focused solely on the master's recommendation that the amount of support calculated for 1990 continue in effect until May 6, 1999—the date Juliann filed her motion to establish child support. Juliann did not object to Master Brown's calculation of support for 1990.

In October 2000 the superior court approved the master's calculation of child support for 1990. With respect to the master's recommendation to leave the 1990 calculation in effect until 1999, the court initially ordered the parties to "mediate their dispute regarding calculation of child support for periods after 1990." When the parties were unable to agree on the issue, the court ordered each party to "file a brief indicating their position on the issue of whether the 1990 child support calculations should apply through 1999 and, if not, at what intervals calculations should be done." Both parties filed briefs addressing this issue.

On April 16, 2001, the superior court ruled that "for the reasons set forth in Master Brown's July 17, 2000 report ... modification of the now existing child support order, which establishes support as of 1990, will not be allowed for any period prior to the time [Juliann] filed her motion to [e]stablish [c]hild support on May 6, 1999."

Juliann appeals.

## III. DISCUSSION

 Juliann challenges both the superior court's calculation of child support for 1990 and its order providing that, to avoid violating the rule against retroactive modification, this amount could not be modified for the period before Juliann's 1999 motion to establish child support. We usually review awards of child support for abuse of discre-

tion.[1] But issues concerning the proper method of calculating child support present questions of law, which we review de novo.[2] We similarly review de novo the superior court's interpretation of civil rules.[3]

### A. Juliann's Failure To Object to the Master's Recommended Calculation of Kenneth's 1990 Child Support Obligation Precludes All But Plain-Error Review of the Court's Order Adopting that Calculation.

Juliann first challenges the superior court's calculation of Kenneth's child support obligation for 1990. In particular, she contends that the superior court erred in calculating both parents' adjusted incomes for child support purposes.

But as Kenneth points out, although Juliann objected to the master's recommendation that the child support obligation should remain unchanged from 1990 until Juliann filed her motion to establish child support in 1999, she "did not object to any part of the Master's factual findings or his calculation of child support based on 1990 income." Kenneth urges this court to follow the lead of a majority of other courts and "adopt a rule requiring a party to raise objections [to the master's report] to the superior court in order to preserve them, as this rule promotes efficient use of judicial resources and promotes the proper development of a record as to whether the findings are clearly erroneous." Juliann responds that if this court adopts such a rule, we should do so only prospectively because she had no "specific notice that the failure to file objections would constitute a waiver of the right to raise on appeal issues not presented in the form of objections to the superior court."

Alaska Civil Rule 53(d)(2) governs the superior court's adoption of a master's report:

> In an action to be tried without a jury the court shall accept the master's findings unless clearly erroneous. Within 10 days after being served with notice of the filing

---

1. *See, e.g., Spott v. Spott,* 17 P.3d 52, 55 (Alaska 2001); *Bennett v. Bennett,* 6 P.3d 724, 726 (Alaska 2000).

2. *See Spott,* 17 P.3d at 55.

3. *See Airoulofski v. State,* 922 P.2d 889, 892 (Alaska 1996).

of the report any party may serve written objections thereto upon the other parties. Application to the court for an action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 77. The court may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

The key language here is the rule's provision that "any party may serve written objections" within ten days after being notified of the master's findings.

■ Although this court has never considered whether this provision requires objections to be raised in superior court to preserve them for appeal, we have long adhered to the tenet " 'that matters not raised at trial will not be considered on appeal,' " [4] and have

explained that this requirement "arises out of notions of judicial finality and efficiency, as well as fairness to the opposing party." [5] Moreover, other state courts have required trial court objections as a prerequisite to appellate challenge of orders adopting masters' findings,[6] uniformly holding that only those points specifically raised in a trial court objection can be raised on appeal.[7]

Federal courts, too, support this requirement. They have interpreted the nearly identical Federal Rule of Civil Procedure 53(e)(2) [8] to require an objection at the district court level to preserve a party's right to appeal a special master's factual findings.[9] Similarly, almost all federal appellate courts addressing the analogous issue of appellate challenges to orders approving magistrates' reports [10] have ruled that a party's failure to file objections in the trial court limits the

---

**4.** *Doyle v. Doyle*, 815 P.2d 366, 372 (Alaska 1991) (quoting *Brooks v. Brooks*, 733 P.2d 1044, 1053 (Alaska 1987)); *see also Rowen v. Rowen*, 963 P.2d 249, 255 (Alaska 1998) (quoting same).

**5.** *Pieper v. Musarra*, 956 P.2d 444, 446 (Alaska 1998).

**6.** *See In re Marriage of Doolittle*, 265 Mont. 168, 875 P.2d 331, 334 (1994) ("The intent—implicit but clear—of Rule 53 ... is that all objections to a master's report must be timely made in a party's written objections."); *In re Marriage of Hayes*, 259 Mont. 302, 856 P.2d 227, 229 (1993) ("We hold that the permissive word 'may' refers to the permission given to 'any party' to object. The objection *must* be made within the ten day limit.") (emphasis added); *Mahoney v. Mahoney*, 567 N.W.2d 206, 210 (N.D.1997) ("Generally, the failure to file timely objections to the report and recommendations of a special master waives the right to appeal the recommended findings."); *In re Miamisburg Train Derailment Litig.*, 132 Ohio App.3d 571, 725 N.E.2d 738, 744 (1999) ("Under Civ. R. 53(E)(2), appellants had fourteen days from the filing of the master's order to object to this or any other factual finding. Having failed to do so, the plaintiffs waived any objection to the factual finding that they might now wish to raise on appeal.").

**7.** *See Doolittle*, 875 P.2d at 334 ("[A]ll objections to a master's report must be timely made in a party's written objections.") (emphasis added); *Mahoney*, 567 N.W.2d at 211 ("[B]y not making his *specific* arguments about net income to the trial court, [the father] waived his right to argue on appeal that the court erred in adopting the special master's computation of his net income.") (emphasis added).

**8.** Federal Rule of Civil Procedure 53(e)(2) provides:

> In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. *Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties.* Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

(Emphasis added.)

**9.** *See Stone v. City & County of San Francisco*, 968 F.2d 850, 858 (9th Cir.1992) (holding that the city had waived its right to appeal several of the district court's factual findings that supported its contempt order by not contesting them when they were submitted by the Special Master as part of his progress reports); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 261 (7th Cir.1989) ("[W]e hold that when a matter has been referred to a magistrate, acting as a special master pursuant to 28 U.S.C. § 636(b)(2) and Fed.R.Civ.P. 53, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the district court as objections to the magistrate's report.").

**10.** Under 28 U.S.C. § 636(b)(1) a United States district court judge may refer dispositive pretrial motions and petitions for writ of habeas corpus to a magistrate, who must conduct appropriate proceedings and recommend dispositions. Like Federal Rule of Civil Procedure 53, the statute also provides that any party that disagrees with

party's right to challenge the magistrate's report on appeal.[11]

In *Thomas v. Arn*,[12] the United States Supreme Court explained that this rule is supported by considerations of judicial economy:

> The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute. The Sixth Circuit's rule, by precluding appellate review of any issue not contained in objections, prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing. Absent such a rule, any issue before the magistrate would be a proper subject for appellate review. This would either force the court of appeals to consider claims that were never reviewed by the district court, or force the district court to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report. Either result would be an inefficient use of judicial resources. In short, the same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court applies here.[13]

■ In light of these authorities, and in keeping with our own consistently expressed interest in judicial economy and fairness to opposing litigants, we hold that Alaska Civil Rule 53(d)(2) requires any party who disagrees with a master's finding to file a timely objection to the finding at the trial court level as a prerequisite to challenging the finding on appeal.

■ We further hold that this interpretation must apply in the present case. Juliann

---

the magistrate's recommendations "may serve and file written objections" to the magistrate's report within ten days after receiving it. *See also Smith v. Frank*, 923 F.2d 139, 141 n. 1 (9th Cir.1991) ("Failure to object to special master's findings of fact and conclusions is treated identically to failure to object to magistrate's findings and conclusions.").

**11.** Courts in the First, Second, Fourth, Sixth, and Seventh Circuits have adopted a rule that a party's failure to file objections to a magistrate's report waives the right to consideration of all issues on appeal, both factual and legal. *See, e.g., Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir.1995) ("Failure to file objections with the district court to a magistrate's report and recommendation waives the right to appeal all issues addressed in the recommendation, both factual and legal."); *Wimmer v. Cook*, 774 F.2d 68, 74 n. 8 (4th Cir.1985) (recognizing that failure to file objections to a magistrate's report ordinarily precludes consideration on appeal of the substance of the report); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983) ("When a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision."); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981) (prospectively adopting rule that in order to appeal a district court's adoption of a magistrate's decision a party must first object to the magistrate's decision at the trial court level); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980) (interpreting 28 U.S.C. § 636(b)(1)(C)'s language "may serve and file written objections" to mean that "a party 'may' file objections within ten days or he may not, as he chooses, but he 'shall' do so if he wishes further consideration").

Courts in the Fifth, Ninth, and Eleventh Circuits have concluded that the failure to file objections waives factual, but not legal, issues on appeal. *See, e.g., Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998) (holding that "[f]ailure to object to a magistrate judge's recommendation waives all objections to the magistrate judge's findings of fact" and is "a factor to be weighed in considering" whether the party also waived the right to challenge the magistrate judge's purely legal conclusions); *Deloney v. Estelle*, 679 F.2d 372, 372–73 (5th Cir.1982) ("[F]ailure to file written objections to the magistrate's report ... bar[s] the party from attacking on appeal factual findings in the report accepted or adopted by the district court."); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982) ("The absence of objections to the magistrate's report and recommendations limits the scope of appellate review of factual findings to plain error or manifest injustice but does not limit review of legal conclusions.").

The Eighth Circuit has not squarely addressed the issue but seems to lean toward the Fifth, Ninth, and Eleventh Circuits' view, declining to hold that failure to make timely objections to a magistrate's recommendations categorically waives a party's right to challenge the findings on appeal. *See Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1205–06 (8th Cir.1983) (holding that appeal should not be dismissed on a theory of waiver through failure to object to magistrate's report).

**12.** 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**13.** *Id.* at 147–48, 106 S.Ct. 466 (quotations and citations omitted).

had ample notice of the need to object to the master's report at the trial court level. Although our own decisions had not squarely resolved the point, Rule 53(d)(2)'s language is fairly straightforward, and virtually every court that has addressed similar rules has held that a party's failure to object to a master's findings at the trial court level limits that party's ability to challenge those findings on appeal. Moreover, here, the master expressly informed both parties that "[a]ny objections to this Master's report *must* be filed under Civil Rule 53 within ten days after its mailing."[14] And Juliann actually did object to some parts of the master's decision—his recommendation not to alter the 1990 support calculation in subsequent years—thereby expressing her opposition to those specific recommendations, while implicitly acquiescing to the remaining recommendations.

Considering the totality of these circumstances, then, we hold that Juliann's failure to object to Master Brown's proposed calculation of Kenneth's child support obligation for 1990 precludes appellate review of this point except for plain error.

■ "Plain error exists 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.'"[15] Applying this rigorous standard, we reject Juliann's primary challenges to the order establishing Kenneth's 1990 child support obligation—her claims concerning the master's decision to disregard, for purposes of calculating Kenneth's 1990 adjusted gross income, all profits, losses, and related tax

consequences arising from his involvement in three side business ventures.[16] Because our cases recognize that trial courts exercise " 'broad discretion' in deciding whether ... funds [of this kind] should be included in income for Civil Rule 90.3 purposes,"[17] the master's decision to disregard these items is not an "obvious mistake" giving rise to plain error.[18]

■ We nevertheless do find plain error in one other respect. Juliann points out that the master's $480 deduction for child care expenses reflects only the amount of her child and dependent care tax credit. Under Civil Rule 90.3, Juliann contends, the master should have deducted the actual amount of her child care expenses, $5,010. Acknowledging this error, Kenneth argues only that his own 1990 adjusted gross income should similarly be adjusted to reflect his actual child care expenses, $1,537, rather than his child and dependent care tax credit, $461, the amount used by the master.

We agree with the parties. Civil Rule 90.3(a)(1)(D) provides that "work related child care expenses for the children who are the subject of the child support order" should be deducted when calculating a parent's income for child support purposes. The Commentary to Rule 90.3 clarifies this to mean that "reasonable child care expenses that are necessary to enable a parent to work, or to be enrolled in an educational program which will improve employment opportunities, are deductible."[19] We find plain error, then, in the 1990 calculation's reliance on the child

---

14. *See United States v. Schronce*, 727 F.2d 91, 94 (4th Cir.1984) (holding that because the magistrate's report explicitly stated that "written objections to the proposed findings of fact and conclusions of law ... *must* be filed within ten (10) days after service," appellant's failure to object to the magistrate's report constituted a waiver of his right to appellate review) (emphasis added).

15. *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001) (quoting *Sosa v. State*, 4 P.3d 951, 953 (Alaska 2000)).

16. Specifically, while not disputing the master's recommendation to disregard losses resulting from Kenneth's participation in these business ventures, Juliann contends that it was improper to exclude from Kenneth's gross income the $4,333 in profits he realized from one of the

businesses, the D & G Enterprises partnership. Juliann further argues that, in calculating Kenneth's adjusted gross income, the master should have deducted from Kenneth's gross wages only the federal income tax that he actually paid, not the much higher amount that the master estimated Kenneth would have paid had he not reported his business losses on his tax return.

17. *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992) (quoting *Bergstrom v. Lindback*, 779 P.2d 1235, 1237 (Alaska 1989)); *see also Eagley v. Eagley*, 849 P.2d 777, 779 (Alaska 1993).

18. *D.J.*, 36 P.3d at 668.

19. Alaska R. Civ. P. 90.3 cmt. III(D).

and dependent care tax credit.[20] On remand the trial court will need to determine whether the amounts of actual child care expenses both parents claimed on their tax returns were in fact "reasonable" and "necessary" to enable them to work.

### B. Requiring Kenneth's Support Obligation To Remain Unchanged from January 1, 1990 through May 6, 1999, Was Not Necessary To Avoid the Rule Barring Retroactive Modification.

Juliann objected to the master's recommendation that Kenneth's 1990 child support obligation should remain unchanged until May 6, 1999, the day Juliann filed her motion to establish Kenneth's child support. The superior court nevertheless approved Master Brown's recommendation, expressly adopting the reasons set forth in the master's report; the report, in turn, reasoned that Kenneth's 1990 support obligation should be left unmodified until 1999 because "any mistake . . . by the court in not entering the support order in 1990, or soon thereafter, was the parties' fault," and because "[a]llowing hearings as to a pre–1999 modification of support would go against Civil Rule 90.3(h)(2)'s prohibition against retroactive modifications of child support."

On appeal, Juliann renews her objection to the master's findings, arguing that Civil Rule 90.3(h)(2)'s bar on retroactive modifications is inapplicable here because there was no outstanding support order to modify before she

filed her motion to establish support: "If a child support order has not been entered, . . . retroactive modification of the child support order would be impossible [because] [t]here is no order to modify." We find this argument persuasive.

Alaska Civil Rule 90.3(h) governs the modification of a child support award. Rule 90.3(h)(1) provides that "[a] *final child support award* may be modified upon a showing of a material change of circumstances as provided by state law." (Emphasis added.) Rule 90.3(h)(2) goes on to say that "[c]hild support *arrearage* may not be modified retroactively" and that "[a] modification which is effective on or after the date that a motion for modification . . . is served . . . is not considered a retroactive modification."[21] (Emphasis added.) The rule against retroactive modification thus only prohibits modifying "arrearage" already due under a "final child support award" in existence when a motion to modify is filed.

■■■ Here, no final support order was entered in the immediate aftermath of the parties' divorce, and no support order existed a decade later, when Juliann filed her motion to establish Kenneth's child support obligation on May 6, 1999. Juliann's motion thus requested entry of the "final child support award" that had never been entered in her case—an award that would initially establish Kenneth's child support obligation for the nine-year period that preceded her motion, not an award that would modify arrearage that was already due. Of course, once

---

**20.** *See Bergstrom*, 779 P.2d at 1237 n. 7 (holding that the trial court erred "to the extent it did not reduce [the father's] income by his *actual* work-related child care expenses as required by Civil Rule 90.3") (emphasis added).

**21.** Civil Rule 90.3(h) provides in full:
(1) Material Change of Circumstances. A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order. For purposes of this paragraph, support includes health insurance payments made pursuant to (d)(1) of this rule.
(2) No Retroactive Modification. Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d).

A modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Enforcement Division, is served on the opposing party is not considered a retroactive modification.
(3) Preclusion. The court may find that a parent and a parent's assignee are precluded from collecting arrearages for support of children that accumulated during a time period exceeding nine months for which the parent agreed or acquiesced to the obligor exercising primary custody of the children. A finding that preclusion is a defense must be based on clear and convincing evidence.
AS 25.27.166(d), referred to in 90.3(h)(2), allows for the retroactive extinguishment of child support arrearages where paternity is disestablished.

the court did establish Kenneth's support for 1990, any increase in the first-year amount would have modified that obligation. But this modification would not be retroactive under Rule 90.3(h)(2): Juliann's May 6, 1999, motion sought to establish support for the entire ten-year period since the divorce; because the court established Kenneth's 1990 obligation after Juliann filed this motion, any modification of that obligation to reflect his later increased earnings necessarily would take effect *after* the date of Juliann's motion and so "is not considered a retroactive modification" under Rule 90.3(h)(2).[22] In short, nothing in Civil Rule 90.3(h) either commanded or supported the master's recommendation, which in effect retroactively *froze* Kenneth's first-year support obligation immediately upon establishing it in response to Juliann's motion.[23] We conclude, then, that it was error to fix Kenneth's support obligation at its 1990 level for the entire period preceding Juliann's motion.[24]

This conclusion does not resolve the question of how Kenneth's child support should be calculated for the post–1990 years covered by Juliann's motion—1991 to 1999. In *Spott v. Spott* we observed that "in making retrospective rather than prospective child support awards actual income rather than earlier predictions as to income should be used."[25] There, a divorced parent appealed a post-trial order requiring him to pay interim child support for a nineteen-month period when the divorce had been pending.[26] The trial court calculated the back support based on a master's earlier predictions of the father's income for that period.[27] We held that, since the support obligation was established after it accrued, the court should have based the amount on the parent's actual income, rather than on the master's earlier predictions of likely income.[28]

Spott points to actual income as an appropriate basis for establishing past support accruing over a relatively short duration. But the present case requires the court to look back over a considerably longer period than the nineteen months at issue in *Spott;* here we deal with a span of approximately ten years. Considering the inherent difficulties of accurately reconstructing parental income over this lengthy period, we think it impractical and unnecessary to require automatic recalculation of support on a yearly basis, as the superior court initially contemplated doing here. Instead, we think that once Kenneth's first-year support obligation has been accurately calculated based on his actual adjusted income, the superior court may maintain that amount of support unchanged for subsequent years in which no change in Kenneth's annual income is shown that would qualify as a substantial change of circumstances under Civil Rule 90.3.[29] On remand, then, after the court corrects its

---

**22.** Our case law confirms this conclusion, establishing that Civil Rule 90.3(h) does not restrict awards of back child support based on fluctuating annual earnings when, as here, an initial support order has never been entered. *See, e.g., Spott v. Spott,* 17 P.3d 52, 55 (Alaska 2001) (holding that the retroactive order of child support for a child for whom no support was ever ordered does not violate Rule 90.3(h)(2) because "[a]s to that child there is no child support order and thus no order to retroactively modify"); *Vachon v. Pugliese,* 931 P.2d 371, 382 (Alaska 1996) (holding that reimbursement of child support for a period during which there was no existing child support order does not violate Rule 90.3(h)(2) because the reimbursement does not modify any existing arrears).

**23.** Indeed, were the bar against retroactive modification so easily triggered, it could presumably be as easily avoided by simply calculating the most recent year of Kenneth's obligation first, and working backward to 1990, the year of divorce.

**24.** Since the master's recommendation to freeze support at the 1990 level was based on the mistaken view that changing support would "go against Civil Rule 90.3(h)(2)'s prohibition against retroactive modification of child support," we need not address the issue whether the parties were to blame in failing to secure a timely child support order.

**25.** 17 P.3d at 56.

**26.** *Id.* at 53–54.

**27.** *Id.*

**28.** *Id.* at 56.

**29.** We note that this approach seems particularly sensible here because Juliann concedes in her opening brief no substantial change in Kenneth's circumstances occurred until she moved to Colorado in 1994.

calculation of Kenneth's 1990 obligation in keeping with the directions in Part III.A of this opinion, Juliann should be given the opportunity to make a prima facie showing of changed circumstances warranting modification of Kenneth's 1990 support obligation in subsequent years.

## IV. CONCLUSION

For these reasons, we VACATE the superior court's order establishing Kenneth's child support obligation for 1990–1999 and REMAND for further proceedings.