# IN RE THE MARRIAGE OF
# MICHAEL W. NOVAK,
## Petitioner and Appellee,
### v.
# TERESA A. NOVAK,
## Respondent and Appellant.

No. DA 13-0137.
Submitted on Briefs January 22, 2014.
Decided March 11, 2014.
2014 MT 62.
374 Mont. 182.
320 P.3d 459.

For Appellant: **Joseph C. Engel, III**, Attorney at Law, Great Falls.

For Appellee: **Jeffrey S. Ferguson**, Attorney at Law, Great Falls.

JUSTICE WHEAT delivered the Opinion of the Court.

## BACKGROUND

¶1 Michael and Teresa Novak married in 1988. In 2007, Michael acquired a 50% interest in Legends Entertainment, Inc. (LEI). LEI runs a poker game at the Sting Sports Bar, leasing tables from the bar, taking a fee from games, and providing Michael with income.

¶2 On March 10, 2010, Teresa received a serious head injury while horseback riding. Teresa has experienced grand mal seizures, depression, anxiety, and other mental health issues as a result of this injury. A therapist testified, and the District Court found, that Teresa's injury would preclude her from gainful employment in the future. Teresa received an insurance payout related to her head injury totaling $97,000.

¶3 Michael petitioned to dissolve the marriage in July of 2010. At the hearing for maintenance and support, Teresa testified that, after purchasing a replacement car for $38,000 and paying other expenses, her $97,000 insurance payout had dwindled to $15,000. Michael testified that Teresa had given him $3,000 from her insurance payout for a trip to Baltimore, but that he had refused to go on the trip and actually spent the money on assorted bills, including $700 of Teresa's medical bills. Michael also testified that he paid around $100 per month towards Teresa's medical bills, and that he would continue paying those while the divorce was pending. The attorneys in this case briefly exchanged information concerning the amount of the payout, but did not determine whether or to what extent the payout

compensated medical expenses or lost income.

¶4 The District Court denied any maintenance to Teresa upon a finding that Teresa had been "disingenuous" and "profligate" with her recent insurance award, that the insurance payout was not being used for medical expenses because Michael had paid those bills, that she would be eligible for Social Security Disability, and that she would receive a portion of Michael's retirement pay.

¶5 The value of LEI was heavily disputed by both parties and eventually proceeded to bench trial. The District Court considered testimony on LEI's value from two opposing experts. CPA Dan Vuckovich (Vuckovich) valued Michael's share in LEI at $11,700 based on the cost of starting the poker game, LEI's tax returns, and the high amount of risk associated with the business. CPA Nick Bordeau (Bordeau) employed an "investment value approach" which valued Michael's share at $173,000. One of the contributing factors to Bordeau's higher valuation was his inclusion of LEI's goodwill value. After considering the testimony of both experts, the District Court valued Michael's share of LEI at $25,000.

¶6 After the dissolution order, Teresa filed a motion to hold Michael in contempt and pay her attorney fees on the grounds that he had failed to pay her a portion of his military retirement income. The District Court denied that motion, finding that the dissolution order had not required the retirement income to be paid, but rather, that Teresa was entitled to the income as a function of the military's retirement system because she was married to a military retiree. The court then denied Teresa's request for attorney fees on the grounds that she had received a large insurance payout related to her head injury.

¶7 Michael filed a motion to hold Teresa in contempt for destruction of sports memorabilia awarded to him in the dissolution order, and for attorney fees. The court held a hearing on the matter, and Teresa presented testimony that their son had destroyed the memorabilia. The court held Teresa in contempt upon a determination that she had failed to protect the property from malicious destruction while it was in her possession. The court also awarded attorney fees to Michael.

¶8 We restate the issues on appeal as follows:

¶9 *Did the District Court err in its valuation and division of the marital estate?*

¶10 *Did the District Court err by denying maintenance to Teresa?*

¶11 *Did the District Court err by refusing to award attorney fees to Teresa?*

¶12 *Did the District Court err by refusing to hold Michael in contempt of court for failing to pay part of his military retirement to Teresa?*

¶13 *Did the District Court err by holding Teresa in contempt of court for destroying property awarded to Michael, and awarding attorney fees?*

## STANDARDS OF REVIEW

¶14 Appropriate standards of review will be addressed as they arise in this Opinion.

## DISCUSSION

¶15 *Did the District Court err in its valuation and division of the marital estate?*

¶16 Teresa argues that the District Court erred in determining the value of Michael's interest in LEI. Teresa contends that courts are required to evaluate business assets with the "investment value" method, taking into account the goodwill value of the business. While the investment value method may be generally acceptable as a method of valuation, "[a] district court may value marital property based on expert testimony, lay testimony, documentary evidence, or any combination thereof, as long as the valuation is reasonable in light of the evidence submitted." *In re Marriage of Crilly*, 2005 MT 311, ¶ 19, 329 Mont. 479, 124 P.3d 1151 (citation omitted). Thus, we will only disturb a district court's valuation and allocation if it abuses its discretion or its findings are clearly erroneous. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39; *Schwartz v. Harris*, 2013 MT 145, ¶ 15, 370 Mont. 294, 308 P.3d 949. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *In re Marriage of Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67.

¶17 The District Court's valuation of LEI was supported by substantial evidence and it arrived at a reasonable valuation under the circumstances. The two experts in this case differed in their valuation of Michael's share by more than $150,000. "[W]hen faced with widely conflicting valuations, the District Court is required to give reasons for selecting one value over the others." *In re the Marriage of Hurley*, 222 Mont. 287, 296, 721 P.2d 1279, 1285 (1986). The court here gave reasons for doubting both of the expert valuations; Bordeau ignored LEI's declining income for the last several years, the fact that LEI operated on a monthly lease which the lessor could decline to renew,

and the risk that a rival poker table could open elsewhere and further depress LEI's income; Vuckovich's valuation had ignored the ordinary business income that LEI provided to Michael. Ultimately, the court found that LEI's tax return was the best guide for its actual value because it showed the monthly income to Michael but also accounted for LEI's declining income. The court was not obligated to follow either CPA's valuation, and properly exercised its discretion when it departed from their conclusions because both had ignored facts relevant to the valuation of LEI. In light of these circumstances, the District Court's valuation was not unreasonable or unsupported by evidence.

¶18 ▪ Teresa points to other facts that tend to support Bordeau's valuation of LEI; recent legislation increased pot limits for poker tables, LEI's goodwill value, Michael's "skimming" of income. The legislation to increase pot limits from $300 to $800 had not been introduced in the Legislature until December 17, 2012, several months after the District Court had concluded hearing arguments on LEI's value. Mont. H. 141, 63d Legis., Reg. Sess. (Dec. 17, 2012). The District Court is not unreasonable for failing to foresee the introduction and passage of this legislation and its impact on LEI's value.

¶19 Next, concerning the valuation of LEI's goodwill, there is no rigid rule for valuation of that particular intangible. *See Baldwin v. Stuber*, 187 Mont. 430, 432-33, 610 P.2d 160, 161-62 (1980). A district court may value goodwill based on all the evidence and the credibility of the witnesses. *In re Marriage of Lopez*, 255 Mont. 238, 243, 841 P.2d 1122, 1125 (1992). The court here considered the goodwill value in the context of other circumstances, such as declining profits and the risk of future decline. That evidence supported the court's conclusion that LEI was not as valuable as Bordeau had claimed. After considering testimony from different experts and examining other facts relevant to LEI's value, the court properly exercised its discretion by valuing LEI significantly lower than Bordeau's estimate, but also much higher than Vuckovich's estimate.

¶20 ▪ Finally, Teresa's allegation that Michael skimmed income has no support in the record. When questioned about his expenditure of $127,000 from October 2010 to January 2012, Michael clarified that the number took into account "all my income, all of my debt, all of my spending, all of my savings" which included payments on the Novaks' underwater mortgage. Teresa concludes that these expense totals combined with Michael's trips to Las Vegas are implied evidence of skimming because he is living beyond his means. However, Michael also provided specific accounting for his expenses on those trips. At

trial, the District Court also considered extensive testimony on the daily profits and expenses of LEI, the ease and difficulties involved in setting up a poker game, as well as the checks and balances that protect against under-reporting income. Teresa's allegations of fraud, therefore, amount to speculation unsupported by evidence in the record. The District Court acted reasonably and was supported by substantial evidence when it determined the value of Michael's share in LEI.

¶21 *Did the District Court err by denying maintenance to Teresa?*

¶22 Teresa argues that the court should have awarded maintenance to her based on her disability and financial need. We review a district court's award of maintenance for an abuse of discretion, absent clearly erroneous findings. *In re Marriage of Funk*, ¶ 6. Courts may grant a maintenance order for either spouse only if (a) the spouse seeking maintenance lacks sufficient property to provide for the spouses' reasonable needs and (b) the spouse is unable to be self-supporting through appropriate employment. Section 40-4-203(1), MCA. In determining whether maintenance is needed, the court must consider all relevant facts, including the financial resources of the party seeking maintenance, the physical and emotional condition of the spouse seeking maintenance, and the ability of the spouse from whom maintenance is sought to meet the spouse's own needs while paying maintenance. Section 40-4-203(2)(a), (e), (f), MCA.

¶23 We conclude that the court's denial of maintenance was based on an improper valuation of Teresa's income and needs under § 40-4-203, MCA. It is undisputed here that Teresa is unable to be self-supporting through appropriate employment due to a serious head injury before the dissolution. The court refused maintenance on the grounds that Teresa had been "disingenuous" and "profligate" with her $97,000 insurance payout, that Michael had paid for some of her medical expenses, that she would receive a portion of Michael's future retirement pay, and that she would be qualified for Social Security assistance.

¶24 The District Court's analysis departs from § 40-4-203(2), MCA, criteria in a number of ways. First, even if Teresa does qualify for Social Security, "[i]f the effect of not awarding maintenance is to make a spouse a ward of the state, maintenance should be awarded if possible." *Kowis v. Kowis*, 202 Mont. 371, 378, 658 P.2d 1084, 1088 (1983) (citing *Stenberg v. Stenberg*, 161 Mont. 164, 167-68, 505 P.2d 110, 112-13 (1973)). The court's Social Security rationale, therefore, was not a valid consideration under § 40-4-203(2), MCA. Second,

Teresa's disingenuousness or profligacy with her insurance payout does not speak to any of the criteria listed in the statute. In fact, "marital misconduct" is specifically excluded from consideration in maintenance awards. Section 40-4-203(2), MCA.

¶25 Third, the District Court erred when it broadly generalized Teresa's insurance payout as pure income. We have previously considered the division of a personal injury claim as it relates to payment of child support. *See In re Marriage of Durbin*, 251 Mont. 51, 60-61, 823 P.2d 243, 248-49 (1991). We held:

> The District Court found that [parent]'s future medical expenses "are anticipated to be substantial." Considering all of [parent]'s personal injury awards without considering [parent]'s actual and necessary needs including those resulting from his permanent disability is an inappropriate result. ...
>
> Just as inappropriate, however, is to preclude [parent]'s personal injury awards when considering a child support modification in this instance. [Parent]'s personal injury awards serve in part to replace the income he can no longer earn through employment. ...

*In re Durbin*, 251 Mont. at 60-61, 823 P.2d at 248-49.

¶26 Here, Teresa has not been made richer by a serious head injury, and likely faces extensive medical costs in the future. Yet, some portion of the insurance payout was likely designed to compensate Teresa for her lost income resulting from the head injury. The District Court, therefore, must evaluate a personal injury award to determine to what extent the award covers medical care, and to what extent it compensates for lost income. *In re Durbin*, 251 Mont. at 60-61, 823 P.2d at 248-49.

¶27 No such evaluation occurred here. The court concluded that, since Michael had paid some of Teresa's medical expenses, Teresa's insurance payout was purely income. But Michael testified that he paid $700 of Teresa's medical expenses using money given to him by Teresa from her insurance payout. Even if this money did not already belong to Teresa, it is very unlikely that this constitutes a substantial portion of her medical expenses, as Teresa is continually receiving treatment from psychiatrists and physicians for grand mal seizures, cognitive problems, PTSD, depression, headaches and anxiety related to the head injury. In fact, Teresa's expenses, combined with her purchase of a replacement car, left her with only $15,000 from the insurance payout when the maintenance hearing occurred in October, 2010. Although Michael also testified that he paid $100 per month

towards Teresa's medical bills through the duration of the divorce proceeding, this amount will not address Teresa's needs after the completion of the divorce. Finally, the nature and amount of Teresa's payout was addressed only briefly by counsel at the maintenance hearing and neither attorney established whether the payout compensated Teresa for income or medical expense or both. The court was required to evaluate Teresa's income and ability to support herself under § 40-4-203(2), MCA, but drastically overestimated that ability when it characterized the insurance payout as pure income.

¶28 The only valid reason left for the District Court's denial of maintenance is that Teresa will receive part of Michael's retirement pay: $1,328 per month. That amount is drastically smaller than the court's original estimate of Teresa's wealth and is unlikely to cover Teresa's alleged expenses in finding a new home, paying medical expenses, caring for their disabled son, and paying down $28,000 in outstanding debt. It is also notable that the court's order never actually mandated that Michael give Teresa $1,328, and he refused to pay her that amount after the court's order was issued.

¶29 The court was incorrect as a matter of law on two of its three justifications for denying maintenance, and in one case it broadly generalized an insurance payout as pure income. Based on these errors, we conclude that the court considered improper criteria under § 40-4-203(2), MCA, and vastly overestimated Teresa's ability to support herself. The court is not obligated to award Teresa maintenance, but it is required to give an accurate evaluation of her actual income in relation to her needs. This evaluation should examine the extent to which her personal injury award compensates lost income versus medical expenses, and should not evaluate Teresa's alleged profligacy or her potential to depend on Social Security. We note that other factors may also be considered under § 40-4-203(2), MCA, such as Michael's inability to pay due to outstanding debt on their home or the decline of his income from LEI. Those factors, however, were not given any consideration in the court's maintenance order. We therefore reverse and remand to the District Court for a proper evaluation of Teresa's maintenance request under the criteria set forth in § 40-4-203(2), MCA.

¶30 *Did the District Court err by refusing to award attorney fees to Teresa?*

¶31 A court may order a party to pay reasonable costs and attorney fees to the other party in a dissolution of marriage case after "considering the financial resources of both parties." Section 40-4-110,

MCA. We use a three-prong approach in deciding whether an award of attorney fees was appropriate pursuant to § 40-4-110, MCA. An award of attorney fees must be (1) based on necessity; (2) reasonable; and (3) based on competent evidence. *In re Marriage of Bee*, 2002 MT 49, ¶ 42, 309 Mont. 34, 43 P.3d 903.

¶32 We have already determined that the District Court erred in evaluating Teresa's necessity with regard to the maintenance award. The court employed the same reasoning in denying attorney fees; that Teresa had received an insurance payout and therefore, had sufficient resources to pay her attorney. We have already determined that the evaluation of Teresa's income and necessity was in error, so we also reverse on this determination of necessity for attorney fees. Teresa's insurance payout, standing alone, is insufficient to determine whether attorney fees are warranted under § 40-4-110, MCA.

¶33 *Did the District Court err by refusing to hold Michael in contempt of court for failing to pay part of his military retirement to Teresa?*

¶34 Teresa argues that Michael should have been held in contempt when he withheld a portion of his retirement income from her. The court reviewed the order and found no explicit requirement that Michael pay Teresa that portion. The court also found that Michael had conferred other benefits on Teresa not listed in the order, and that he should be credited for that benefit.

¶35 ▉ A district court's decision not to hold a party in contempt is a discretionary tool of the court to enforce compliance with its decisions. *In re Marriage of Baer*, 1998 MT 29, ¶¶ 44-45, 287 Mont. 322, 954 P.2d 1125. Here, the court reviewed the previous order dividing assets, and found that it did not require Michael to provide part of his retirement income to Teresa. Rather, the order recognized that Teresa was entitled to that income by operation of the military retirement system because she had been married to Michael while he served in the military, and used that amount to calculate whether she was entitled to maintenance. While Teresa may have a valid legal argument that Michael owes her this income, that debt did not originate in the court's order. Since contempt was not required to enforce compliance with an order of the court, it was within its discretion in refusing to hold Michael in contempt.

¶36 *Did the District Court err by holding Teresa in contempt of court for destroying property awarded to Michael, and awarding attorney fees?*

¶37 Teresa objects to the court's holding her in contempt upon a finding that some of the undistributed marital property had been

maliciously burned while in her possession. Teresa blames her son for the malicious destruction of Michael's property. In family law cases, we review orders of contempt to determine whether the district court acted within its jurisdiction and whether the evidence supports the contempt. *In re Marriage of Dreesbach*, 265 Mont. 216, 223-24, 875 P.2d 1018, 1022-23 (1994). Disobedience of a lawful judgment of the court is grounds for contempt. Section 3-1-501(1)(e), MCA. Reasonable attorney fees are permissible in a contempt action. *See In re Marriage of Redfern*, 214 Mont. 169, 173, 692 P.2d 468, 470 (1984).

¶38 ■ Teresa does not deny that the court required her to give Michael the items, or that the items in question were in her possession when her dependent son maliciously destroyed them. Her son's malicious destruction of the items and her failure to protect the items while they were in her home makes her no less responsible for complying with the court's order dividing the estate. The court was justified in finding Teresa in contempt for destroying property subject to the dissolution order, and the evidence presented at the contempt hearing supports that finding. The court was also within its discretion in awarding attorney fees to Michael.

## CONCLUSION

¶39 We reverse and remand this case for a proper evaluation of whether Teresa is entitled to maintenance, and for a determination of whether attorney fees are proper based on Teresa's financial abilities. We affirm the District Court's valuation of Michael's share of LEI, the court's holdings on the contempt orders, and the court's award of attorney fees associated with the contempt proceeding.

CHIEF JUSTICE McGRATH, JUSTICES McKINNON, COTTER and RICE concur.