FILED

04/10/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0369

DA 17-0369

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 88N

IN RE THE MARRIAGE OF:

CYNTHIA G. TRONSTAD,

Petitioner and Appellee,

v.

LEROY A. TRONSTAD,

Respondent and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Fallon, Cause No. DR-2013-018
Honorable Nickolas C. Murnion, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Stephen C. Mackey, Towe, Ball, Mackey, Sommerfeld & Turner, P.L.L.P.,
Billings, Montana

For Appellee:

Joseph M. Raffiani, Raffiani Law Firm, P.C., Billings, Montana

Submitted on Briefs:  March 7, 2018

Decided:  April 10, 2018

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Leroy Tronstad appeals the Sixteenth Judicial District Court's order holding him in contempt of court after he allegedly failed to comply with the court's dissolution decree. We affirm.

¶3    Leroy and Cynthia Tronstad were married in 1990. The couple owned a ranch outside of Baker—which had been passed down to Leroy from his father—and a house in Baker. In September 2013, Cynthia petitioned for dissolution of the marriage. The District Court issued Findings of Fact, Conclusions of Law, and a Decree of Dissolution (Decree) in May 2015.

¶4    The Decree distributed Leroy's and Cynthia's marital assets. The bulk of the marital estate consisted of the ranch land, which was valued at $4,150,000. The court noted that Leroy and Cynthia owed $336,657 on the ranch land to two lenders. The court held that Leroy would be entitled to a greater share of the ranch land than Cynthia but that the couple would split the remaining marital assets evenly.

¶5    The Decree stated that the "marital assets and liabilities should be distributed as set forth in Attachment A." Attachment A listed the couple's marital assets and liabilities, stated the fair market value of each asset or liability, and assigned each to either Cynthia

2

or Leroy. The attachment awarded specific segments of the ranch land to Cynthia and the remainder to Leroy. Under the heading, "Liabilities," the attachment assigned responsibility for the entire $336,557 ranch land debt to Leroy alone.

¶6     The Decree awarded the Baker house and certain other marital property to Cynthia, and it mandated that Leroy pay a $359,000 cash adjustment to Cynthia in ten annual installments. In total, the Decree awarded a net $2,929,691.50 to Leroy and $1,738,103.50 to Cynthia. The Decree stated, "Each party shall comply with and perform in accordance with the Findings and Conclusions set forth above. The parties shall execute all deeds, assignments and other documents necessary to fully carry out the terms of this Decree."

¶7     In November 2015, Cynthia filed a motion for warrant for contempt, asserting that Leroy had failed "to execute loans and clear the titles and deeds for property which were awarded" to her. Despite requests from Cynthia's attorney in the months after issuance of the Decree, Leroy's attorney did not provide Cynthia the deeds to the property that the Decree awarded to her until late February 2016.

¶8     The District Court held a hearing on Cynthia's motion in April 2017. At the time of the hearing, Leroy had not taken any action to assume sole ownership of the ranch land debt. He testified at the hearing that he "didn't figure [he] had the money for the closing costs" to refinance the loans, which would have amounted to ten thousand dollars. Leroy was current on his annual cash adjustment payments to Cynthia of $35,900, and he had paid off the debt on the Baker home.

¶9     After the hearing, the District Court held that Leroy was in contempt of court for failing to refinance the loans and clear Cynthia's title to the property that the Decree

3

awarded to her. The court found that the Decree was "clear, when reading all provisions together, that Cynthia was to receive her share of the ranch property free and clear of any and all encumbrances." It noted, "In order to carry out the terms of the Decree, Leroy must sign all documents necessary to release Cynthia from the indebtedness." Because Leroy had not done so, the court found that Cynthia had been "unable to realize the value of the property she was awarded." The court pointed out that Leroy had "a period of almost two year[s] within which to refinance said loans" and reasoned that there was "no justifiable excuse for such a delay." Noting that the current balance of the ranch land debt was less than ten percent of the total value of the land and improvements, the court reasoned that "Leroy should be able to refinance the indebtedness . . . and release the mortgages on the real property allocated to Cynthia." The court ordered that, in order to "purge his contempt of Court, Leroy shall begin the process of refinancing the loans against the real property within 15 days of this Order, and shall free Cynthia's property titles from such debt within 45 days." Leroy appeals the order holding him in contempt.

¶10 Although a contempt order is ordinarily not subject to appeal, "[a] limited exception exists for contempt orders issued in family law cases, 'only when the judgment or order appealed from includes an ancillary order that affects the substantial rights of the parties involved.'" *Marez v. Marshall*, 2014 MT 333, ¶ 23, 377 Mont. 304, 340 P.3d 520 (quoting § 3-1-523(2), MCA and M. R. App. P. 6(3)(j)). This family law exception applies in dissolution of marriage proceedings. *Lee v. Lee*, 2000 MT 67, ¶ 25, 299 Mont. 78, 996 P.2d 389. If the family law exception for ancillary orders is satisfied, then we review the

4

contempt order "to determine whether the district court acted within its jurisdiction and whether the evidence supports" the finding of contempt. *Marez*, ¶ 23.

¶11 We agree with Leroy that his appeal is properly before the Court. The contempt order obligated Leroy to "begin the process of refinancing the loans against the real property *within 15 days*" of the order and to "free Cynthia's property titles from such debt *within 45 days*." (Emphasis added). Although the Decree ordered that Leroy release Cynthia of the debt on her portion of the ranch lands—as we discuss below—it did not provide a specific deadline by which Leroy was obligated to do this. Because the contempt order provided new, specific deadlines for Leroy's compliance that were not included in the Decree, we hold that the contempt order "includes an ancillary order that affects [Leroy's] substantial rights." *See Marez*, ¶ 23. As such, the contempt order is appealable. *See Marez*, ¶ 23; § 3-1-523(2), MCA; M. R. App. P. 6(3)(j).

¶12 We next address whether the District Court acted within its jurisdiction and whether the evidence supports its finding of contempt. *Marez*, ¶ 23. Leroy concedes that the District Court acted within its jurisdiction in issuing the contempt order. He argues, however, that the evidence does not support a finding that he was in contempt of court. He contends that the Decree did not contain a "definite, certain and specific" order that he refinance the ranch land debt to relieve Cynthia of the debt on her portion of the property. He argues also that the Decree did not specify a time by which he was required to deliver the property deeds to Cynthia, and he maintains that he did so within a reasonable time.

¶13 "[D]isobedience of any lawful judgment, order, or process of the court" constitutes contempt of court. Section 3-1-501(1)(e), MCA; *Novak v. Novak*, 2014 MT 62, ¶ 37,

5

374 Mont. 182, 320 P.3d 459. "A person may not be held in contempt of court for violating an order, unless the terms of the order are definite, certain, and specific." *Goodover v. Lindey's Inc.*, 257 Mont. 38, 42, 847 P.2d 699, 701 (1993).

¶14 In Attachment A of the Decree, the District Court ordered that Cynthia receive specific segments of the ranch land and that Leroy assume the entire debt on that land. This assignment of the entire debt to Leroy constitutes a "definite, certain, and specific" instruction that Cynthia was to receive her segments of the ranch land free of any of the debt. *See Goodover*, 257 Mont. at 42, 847 P.2d at 701. The Decree also ordered that each party "execute all deeds, assignments and other documents necessary to fully carry out" its terms. When read together, the terms of the Decree clearly required Leroy to assume full responsibility for the debt on the ranch land and to ensure that Cynthia receive her share of the property free of encumbrances. Only by refinancing or paying off the debt would Leroy have been able to accomplish this.

¶15 Leroy admitted at the April 2017 hearing—approximately two years after the District Court issued its Decree and seventeen months after Cynthia filed her motion for contempt—that he had not attempted to refinance the debt on the ranch land. Leroy did not argue at the contempt hearing, and he does not argue on appeal, that he intended to refinance the debt in due time or that he was not given ample time to comply with this requirement. By neglecting to refinance the debt, Leroy failed to execute the "documents necessary to fully carry out" the Decree's clear mandate that Cynthia receive her share of the ranch land free of debt.

¶16 Although the contempt order contained new deadlines that were not included in the Decree, it did not, as Leroy contends, add a new requirement that he refinance the debt in his name alone. That requirement was contained in the Decree's guarantee that Cynthia would receive her share of the property free from encumbrances, and the evidence supports the District Court's finding that Leroy violated the terms of the Decree. His "disobedience" of the Decree was sufficient to support a finding that he was in contempt of court. *See* § 3-1-501(1)(e), MCA; *Novak*, ¶ 37. The District Court had authority, within its contempt powers, to issue an appropriate order to enforce the terms of its Decree following Leroy's failure to act. *See Marez*, ¶ 32 ("A district court has the responsibility to enforce its own orders, and may exercise its discretionary contempt power as necessary to enforce the dignity and authority of the court." (internal citations omitted)).

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The court's order holding Leroy in contempt of court is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE