DA 23-0469

FILED

05/07/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0469

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 93N

IN RE THE MARRIAGE OF:

LISA MARIE STRECKER,

      Petitioner and Appellee,

  and

BRADLEY JOHN STRECKER,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR-21-506
Honorable Ashley Harada, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Kevin T. Sweeney, Attorney at Law, Billings, Montana

      For Appellee:

      Casey Heitz, Parker, Heitz and Cosgrove, Billings, Montana

                           Submitted on Briefs:  January 31, 2024

                                    Decided:  May 7, 2024

Filed:

                          _____
                                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Bradley John Strecker (Brad) appeals the Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage (Order) entered in the Thirteenth Judicial District Court, Yellowstone County on August 22, 2023.  In the Order, the District Court held that the marriage between the parties was dissolved, that Lisa Marie Strecker (Lisa) was entitled to one half of the marital estate, that Brad was to provide Lisa with an equalization payment that included paying all of her attorneys' fees related to violations of a prior April 25, 2022 contempt order, and that Brad was to reimburse Lisa for funds which Brad had improperly removed from their joint account.

¶3      Lisa and Brad had been married for roughly 40 years prior to filing for divorce in June of 2021.  At the beginning of their marriage, Brad worked for his parents on their family farm near Billings, Montana.  Although Lisa initially worked outside of the farm, soon after their marriage and at the request of Brad and Brad's parents, she quit her job and began working on the farm.  While Brad farmed and operated the heavy equipment, the District Court noted that "Lisa's responsibilities included, but were not limited to, cleaning; cooking; yardwork; painting; driving trucks; and maintaining all bookkeeping records for the farm business."  Lisa continued to work on the farm until the parties separated.  The

2

District Court concluded that although they both did different things on the farm, "[b]oth parties contributed significantly to the farm operations."

¶4 During their marriage, Brad and Lisa purchased property (Powmer/Hoskins Property) from Brad's parents through a contract for deed. Brad and Lisa fully performed on the contract and the property was placed in the Bradley John and Lisa Strecker Revocable Living Trust. Neither party disputes the purchase and payment for the property or that it was placed in the Trust. The property, which is located east of Billings, borders the Yellowstone River and is extremely valuable. Upon acquisition of the property, Brad and Lisa used it for farming until Brad's retirement in 2017. In anticipation of Brad's retirement, the parties sold most of the farm machinery in 2017 and all property was leased out in 2019. However, the property still contains thousands of dollars' worth of tools and equipment.

¶5 Prior to separation, the parties had a savings account with $750,000.00. They split this evenly shortly after separating. However, the District Court determined that Lisa had been forced to utilize a significant portion of her $375,000.00 share because of Brad's post-separation actions. For example, after separating, Brad removed $270,000.00 from their shared equipment sale account which previously held $385,000.000. Brad deposited this money into his personal account which the District Court determined he then used to purchase a new pickup, two trailers for hauling skidsteers, a side-by-side, and a new welder. Although $140,000.00 was later placed back into the account to pay for taxes, the District Court noted that Brad still "owes Lisa for one-half of the money taken by him and not utilized for the payment of taxes."

¶6     Additionally, the District Court determined that since their separation in June of 2020, Brad had utilized the remaining ranch machinery and marital farm to generate income which he has not shared with Lisa.  The District Court was unable to determine the exact amount that Brad had been able to earn due to his refusal or inability to provide the court with documentation.  However, it estimated that from the sale of hay, use of the parties' beet truck, rental income, possible farming for another party, and a Covid Relief payment in the amount of $28,083.00—which Brad was aware of for months but refused to disclose until after trial—a fair reimbursement would be $150,000.00.  Lisa agreed to this payment in lieu of an exact amount.  Additionally, the court determined that Brad still owed Lisa one half of the $108,000.00 which was removed from the trust account.

¶7     "The distribution of marital property in a dissolution proceeding is governed by § 40-4-202, MCA, under which a trial court is vested with broad discretion to distribute the martial property in a manner that is equitable to both parties."  *Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126 (citing *In re Marriage of Lee*, 282 Mont. 410, 421, 938 P.2d 650, 657 (1997)).  When a district court has apportioned the marital estate, the decision "will stand unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the martial assets resulting in substantial injustice."  *Richards*, ¶ 11 (citing *In re Marriage of Larson*, 234 Mont. 400, 402, 763 P.2d 1109, 1110 (1988)).  When determining the value of property for a dissolution, the district court has broad discretion and "is free to adopt any reasonable valuation of martial property which is supported by the record as long as it is reasonable in light of the evidence submitted."  *Collins v. Collins*, 2004 MT 365, ¶ 17, 324 Mont. 500,

4

104 P.3d 1059 (citing *Meeks v. Meeks*, 276 Mont. 237, 242-43, 915 P.2d 831, 834-35 (1996)).

¶8     On appeal, Brad argues that the District Court erred "by failing to tabulate and value the parties' wealth." Specifically, Brad argues that the parties have significant wealth and that the District Court failed to properly determine the value of the land at issue and that the farm and ranch equipment is not listed or valued. Brad argues that only a range of "perhaps $6 [m]illion or as much as $8 [m]illion" was given for the value of the farmland when the "evidence at trial suggests a range of value of as little as $4 [m]illion to as great as $8 [m]illion." However, this claim is inaccurate. During trial, the District Court heard testimony from both parties regarding the value of the land. Lisa's witnesses included Gina Moore, a realtor, and Joe Cook, a prospective buyer who testified as to what he would pay for the property. The District Court noted that Brad's witnesses consisted of his own personal testimony, and his 92-year-old mother who stated she had memory issues and could not recall testifying about a purported affidavit which she had previously signed.

¶9     During her testimony, Gina Moore testified that in her opinion as a realtor with almost 20 years of experience, and after conducting a certified market analysis, the Powmer/Hoskins property if sold as one unit "should have the starting price of $8 million." Ms. Moore also testified that the property could be split into two parcels if necessary. During Joe Cook's testimony, he stated that he was "ready, willing and able" to purchase either parcel and that he would be willing to pay around $3 million for either parcel. However, he noted that Brad's mother currently had a life estate on the Powmer portion of the property and that his purchase of that parcel would be contingent on him not having to

5

be involved with getting her to leave the property. When asked whether, provided Brad's mother were to leave the Powmer property, he would value both parcels equally, Mr. Cook responded "[a]bsolutely." On cross-examination, Brad's attorney argued that Mr. Cook would not want the Hoskins property without the Powmer property because the Hoskins property had problems with access and would need an easement. However, Mr. Cook corrected him stating, "[n]o, to get to Hoskins, you go down Drury Lane, and then I think it's called DeVoue there on the top . . . so I've never heard that there's ever any access issues off of DeVoue into Hoskins. . . ." Additionally, on redirect, Lisa's attorney clarified that the two parcels were originally separate, contiguous, and that access would not be a problem. However, even if they were, counsel indicated easements could easily be provided. Ultimately, these two witnesses provided a valuation for the property in the range of $6 to $8 million dollars.

¶10    Conversely, Brad's testimony was significantly more varied. During a deposition, Brad stated that he would like to sell the property for $8 million but during trial testified that he would personally "value the property at $9,000 an acre for the irrigated, and roughly [$]4,000 for the grazing." This amounted to a significantly lower evaluation than the $8 million he previously stated he would like to sell the property for. The District Court in its Order noted the testimony from each witness and concluded that "Brad's testimony regarding property valuations, gifting and proposed asset/liability distributions was not consistent with other evidence." The District Court determined that the expert testimony was more accurate and reliable than Brad's lay opinion, which varied throughout the case. A District Court is free to adopt any reasonable valuation of martial property which is

supported by the record as long as it is reasonable in light of the evidence submitted. Seeing nothing in the record that reasonably contradicts the District Court's determination, we conclude that the valuation of $6 to $8 million for the Powmer/Hoskins property and $8 to $10 million for the overall value of the marital estate by the District Court was fair in light of the evidence submitted. Additionally, although Brad now appeals the District Court's Order, it is important to note that the Court's determination regarding property allocation does not differ significantly from Brad's proposed pretrial Findings of Fact and Conclusions of Law.

¶11     Brad next argues that the District Court erred when it found he owed Lisa $150,000.00 for lost income. During their separation, Brad withdrew and diverted funds from the parties' joint bank accounts which he admitted to during a deposition. Additionally, he admitted that he only did this for himself and not for Lisa. The District Court also found that Brad generated income from farm and ranch related rental income, income related to the use of farm and ranch machinery, and received a COVID relief payment. Brad failed to share any of this with Lisa.

¶12     The District Court noted in its Order that Brad's explanations for these amounts were vague and not credible. When the District Court ordered Brad to deposit all farm and ranch related income into the joint trust account, he failed to do so. When asked about the COVID relief payment the court noted that "he simply refused to provide this information until after trial, which is unacceptable." Additionally, the District Court concluded that based on all the evidence available to it, Lisa had established that Brad failed to comply with the court's order to deposit the farm and ranch related income into the joint trust

account and that Brad failed to provide appropriate justification for why he failed to follow the Court's order. Furthermore, Bill Michael—one of Brad and Lisa's neighbors who has known Brad since grade school—when asked if he had any knowledge of Brad withholding money or assets from Lisa, testified that Brad "made reference to me that he didn't feel like [Lisa] was being fair with the money, and therefore he was keeping money back." The District Court determined that Brad had the opportunity to provide accounting of all farm income but was unwilling or unable to do so. Therefore, the District Court relied on the testimony and evidence before it and determined that $150,000.00 would be a fair estimate for what Brad owed Lisa. The District Court determined that "Lisa's evidence at trial indicated that she is entitled to a greater amount than the above amounts; however, she has represented to the Court that she will agree to these amounts in conjunction with her proposed real/personal property allocation." Finally, the District Court took into consideration that Lisa had utilized the entire $145,000.00 of her inheritance on family and farm/ranch expenses and therefore the monetary transfer and the asset/liability allocation was justified. The court noted Lisa utilized her own money to pay for the mortgages and expenses on the Mary Street property—another property owned by the parties.

¶13 We conclude this amount was a reasonable valuation considering the evidence. Additionally, no evidence was presented there was a "clear abuse of discretion as manifested by a substantially inequitable division of the martial assets resulting in substantial injustice" and therefore, we decline to reverse the District Court's decision. *Richards*, ¶ 11.

¶14 Lastly, Brad argues the District Court erred when it found him in contempt and ordered him to pay Lisa's attorney fees. "In family law cases, we review orders of contempt to determine whether the district court acted within its jurisdiction and whether the evidence supports the contempt." *Novak v. Novak*, 2014 MT 62, ¶ 37, 374 Mont. 182, 320 P.3d 459 (citing *In re Marriage of Dreesbach*, 265 Mont. 216, 223-24, 875 P.2d 1018, 1022-23 (1994)). "Reasonable attorney fees are permissible in a contempt action." *Novak*, ¶ 37 (citing *In re Marriage of Redfern*, 214 Mont. 169, 173, 692 P.2d 468, 470 (1984)). This Court utilizes "a three-prong approach in deciding whether an award of attorney fees was appropriate pursuant to § 40-4-110, MCA. An award of attorney fees must be (1) based on necessity; (2) reasonable; and (3) based on competent evidence." *Novak*, ¶ 31 (citing *In re Marriage of Bee*, 2002 MT 49, ¶ 42, 309 Mont. 34, 43 P.3d 903).

¶15 Twice throughout the proceedings the District Court was forced to hold Brad in contempt. It first held him in contempt on April 25, 2022, after he failed to replenish money he had taken from a joint farm trust account and failed to follow the prohibition of spending money from the account unless Lisa agreed to the expenditures. The District Court next held him in contempt due to his failure to follow "the clear terms of the first marital contempt order. . . ." The court also noted that Brad had been ordered to provide an accounting of all income he had generated from the jointly held property from the date of the parties' separation which he failed to do and that Brad continued to withdraw money from the joint trust account without Lisa's authorization or the Court's authorization.

¶16 To explain the unauthorized withdrawals, Brad offered testimony from Rebecca Schmitz, an accountant. The District Court found that Ms. Schmitz' testimony did not

9

conform with the court's order which specifically provided Brad was to account for all income generated from jointly held property from the date of separation forward. Additionally, the court was unable to determine from Ms. Schmitz' testimony whether the expenditures were for personal or for farm related expenses. Brad also failed to follow the requirements of the first contempt order by failing to participate in mutually selecting a realtor with Lisa to "promptly provide an opinion of the current value of all real property owned by the parties in Yellowstone County."

¶17 Ultimately, the District Court concluded that the evidence clearly demonstrated that Brad had improperly withdrawn money from the joint trust account, failed to provide an accounting of generated income, and that his vexatious conduct and repeated resistance of Court orders has resulted in unnecessary attorneys' fees and costs. It therefore held that Lisa was to provide a detailed listing of all her attorneys' fees related to the contemptuous behavior of Brad and that Brad would be responsible for paying the fees from his portion of the marital estate.

¶18 Based on this record, we conclude the District Court did not err in awarding fees for Brad's contempt.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The judgment of the District Court is affirmed.

¶20 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE